UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

NATHANIEL HILL,

        Plaintiff,                    Case No. 2:20-cv-228

v.                                         Honorable Janet T. Neff

ALGER MAXIMUM CORRECTIONAL
FACILITY et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court dismisses Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, appear to have occurred at the Alger Correctional

Facility (LMF) in Munising, Alger County, Michigan.  Plaintiff sues LMF and the following LMF officials and former officials:  former Warden Catherine Bauman; former unknown mailroom supervisor (Unknown Part(y)(ies) #1); and an unknown mailroom clerk (Unknown Part(y)(ies) #2).

Plaintiff alleges that both Unknown Part(y)(ies) #1 and Unknown Part(y)(ies) #2 were careless and negligent in the handling of his legal mail for more than two months while he resided at LMF.  In addition, he contends that Defendant Bauman failed to supervise the other Defendants.

Plaintiff alleges that he experienced "numerous incidents where his legal mail had been opened and delivered to him outside of his presence and (one) incident where legal documentation had been misplace[d]; or lost altogether . . . ."  (Compl., ECF No. 1, PageID.2.) Plaintiff alleges few specifics in his complaint.  However, when the complaint is read together with the attachments, Plaintiff appears to complain of three sets of circumstances.

First, he alleges that he received "back-n-forth correspondence from a paternity suit," between himself and the Wayne County Clerk.  (*Id.*, PageID.3)  He attaches a copy of two exchanges of correspondence related to his attempt to obtain genetic testing to determine paternity. In the first letter, the clerk advised Plaintiff that the court required additional information to determine whether he intended to file an original complaint or a motion in an existing case.  (Ex. 1 to Compl., ECF No. 1-1, PageID.19.)  The clerk purported to attach a list of Case Classification Codes for Plaintiff's reference.  (*Id.*)  In the second letter, dated August 27, 2019, the Clerk again advised Plaintiff to clarify whether he intended to file a new action or intended to file a motion in an existing case.  (*Id.*, PageID.18.)  The letter indicated that the clerk had enclosed his original documents, together with the following forms:  Case Inventory Addendum; the Uniform Child

Custody Jurisdiction Enforcement Act Affidavit; a Certificate on Behalf of Plaintiff Regarding Ex Parte Interim Support Order; and Verified Statement. (*Id.*) Plaintiff does not declare that the letters were opened outside his presence, though he suggests that the correspondence was part of the legal mail that was mishandled. He complains that he did not receive some or all of the referenced enclosures with the correspondence.

Second, Plaintiff complains that he received a notice of a status conference in the same case that was mailed on December 13, 2019. (*Id.*, PageID.12.) In this instance, Plaintiff expressly alleges that the court mailing was opened outside his presence.

Third, Plaintiff alleges that, in mid-December 2019, he received correspondence addressed from "Lakeshore Legal Aid's Counsel and Advocacy Law Line, Attorneys and Counselor's at Law." (Compl., ECF No. 1, PageID.2.) He complains that the letter was opened outside his presence. Plaintiff has attached the correspondence, though not the envelope. (*See* Ex. 1 to Compl., ECF No. 1-1, PageID.1314.) The letter was sent by the office manager, indicating that the program could not assist Plaintiff and offering Plaintiff information about other possible resources to pursue. (ECF No. 1-1, PageID.13–14.)

Plaintiff filed a grievance, complaining about having a "constant problem" with his legal mail. (Ex. to Compl., ECF No. 1-1, PageID.20.)

Plaintiff alleges that Defendants collectively were negligent or grossly negligent in the handling of his legal mail; that their conduct violated prison policy and, arguably, his right to due process; that Defendants' conduct constituted the state tort of negligence; and that the improper handling of his mail violated Plaintiff's First Amendment rights. Plaintiff seeks injunctive relief, together with compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Alger Correctional Facility

Plaintiff sues the Alger Correctional Facility, one of the prisons operated by the MDOC. The prison itself is a building, not capable of being sued. However, to the extent that Plaintiff intends to sue the operators of the prison, his suit is one against a division of the MDOC.

Plaintiff may not maintain a § 1983 action against the MDOC or one of its divisions. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). Therefore, Plaintiff's complaint seeks monetary relief against a defendant who is immune from such relief, Plaintiff's claim against the MDOC (and LMF) is properly dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, the State of Michigan (acting through the MDOC and its subdivision LMF) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66

(1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC is also properly dismissed for failure to state a claim.

## IV. Supervisory Liability

Plaintiff's sole allegation against Defendant Bauman is that she failed to adequately supervise Unknown Part(y)(ies) ##1 and 2. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Bauman engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

## V. Violation of Prison Policy

Plaintiff claims that, by opening the described mail outside his presence, Defendants Unknown Part(y)(ies) ##1 and 2 violated MDOC Policy Directive (PD) 05.03.118, ¶¶ FF, which provides as follows:

6

> A prisoner may have his/her incoming legal mail receive special handling by submitting a completed Mail Requiring Special Handling form (CSJ-246) to the institution's mailroom supervisor or designee. Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

*Id.* Plaintiff alleges that, by violating the policy directive, Defendants Unknown Part(y)(ies) ##1 and 2 deprived him of his right to due process under the Fourteenth Amendment.

To the extent that Plaintiff raises a state-law claim, he is not entitled to relief under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to the extent that Plaintiff alleges a violation of due process arising out of prison policy, his claim also fails. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

7

Plaintiff's claims based on violations of prison policy therefore fail to state a due process claim against any Defendant.

## VI. Legal Mail

Plaintiff complains that Defendants Unknown Part(y)(ies) ##1 and 2 violated his First and Fourteenth Amendment rights to have his legal mail opened in his presence.

It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier,* 417 U.S. 817, 822–23 (1974); *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Nevertheless, a prisoner retains those constitutional rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system. *See Thornburgh*, 490 U.S. 401; *Turner*, 482 U.S. 78; *see also Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (citing *Pell,* 417 U.S. at 822).

The Michigan Department of Corrections may lawfully require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege

8

claim and a Fourteenth Amendment due process claim based on access to the courts), *cited in Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).  With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband.  However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential.  *Lavado v. Keohane*, 992 F.2d 601, 607–09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate).

The Sixth Circuit has recognized that incoming legal mail includes clearly marked legal mail from an attorney, *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996), mail from the Attorney General's Office, *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 2015), and mail from a court, *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003).  Mail from a county clerk, in contrast, "is not legal mail because a clerk 'is not someone who can provide legal advice about a prisoner's rights or direct legal services and is not someone with authority to take action on behalf of a prisoner.'"  *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (quoting *Sallier*, 343 F.3d at 877).

The Court concludes that the correspondence from the Wayne County Clerk postmarked September 27, 2019, does not constitute legal mail under this standard.  The mailing envelope does not indicate that the mail originated from a court, and the envelope was not labeled legal mail.  (Ex. to Compl., ECF No. 1-1, PageID.15.)  Instead, the return address on the envelope was the Wayne County Clerk.  In addition, the caption on the correspondence dated August 9, 2019, "Office of the County Clerk," was identical to that on the September 27 correspondence, and the author of the correspondence was the same.  (*Id.*, PageID.18–19.)  Although Plaintiff has

9

not attached the mailing envelope for the August 9 correspondence, no basis exists for concluding that the envelope from the same entity and person would have been different. As a result, the two pieces of correspondence with the Wayne County Clerk do not constitute legal mail that was required to be opened in Plaintiff's presence. *ACLU Fund of Mich.*, 796 F.3d at 643.

Therefore, at best, Plaintiff's complaint rests on the alleged mishandling of two pieces of mail in December 2019: the notice of a status conference that was clearly mailed from the "Third Judicial Circuit of Michigan" (ECF No. 1-1, PageID.16), and the letter from "Lakeshore Legal Aid's Counsel & Advocacy Law Line." Because Plaintiff did not attach the mailing envelope for the latter, it is not at all clear that the envelope clearly showed that the mail was sent from an attorney or that it was marked as legal mail.

Assuming, however, that both items were properly considered to be legal mail, Plaintiff's allegations fall short of demonstrating a First Amendment violation. The courts regularly have recognized that "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). Plaintiff asserts only isolated incidents of the mishandling of his legal mail by Unknown Part(y)(ies) #1 and/or Unknown Part(y)(ies) #2. He alleges no facts supporting an inference of improper motive. Indeed, he alleges that the violations were merely negligent, not intentional. It is well established that negligent conduct will not state a constitutional

10

claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . ."), and *Baker v. McCollum*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official)). Numerous courts have recognized that a prison official's negligent interference with a prisoner's First Amendment rights does not violate the constitution. *See, e.g., Colvin,* 605 F.3d at 293–94 (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330).

Because Plaintiff alleges only incidental interference with his right to receive legal mail and asserts only negligent, not intentional, conduct by Unknown Part(y)(ies) #1 and Unknown Part(y)(ies) #2, he fails to state a First Amendment claim arising out of the interference with his legal mail.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

11

(6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 25, 2021                               /s/ Janet T. Neff
                                                         Janet T. Neff
                                                         United States District Judge